1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
7                        NORTHERN DISTRICT OF CALIFORNIA
8
9    STEVEN McCAULEY,                          No. C 05-1817 SI (pr)
10              Petitioner,                     **ORDER DENYING HABEAS**
                                                **PETITION**
11        v.
12   JILL BROWN, warden,
13              Respondent.
14   _____/

15                              **INTRODUCTION**

16        Steven McCauley, formerly a prisoner at San Quentin State Prison, filed this pro se action

17   seeking a writ of habeas corpus under 28 U.S.C. § 2254.  This matter is now before the court for

18   consideration of the merits of the pro se habeas petition.  For the reasons discussed below, the

19   petition will be denied.

20                              **BACKGROUND**

21        Steven McCauley was convicted in Alameda County Superior Court of second degree

22   murder and was sentenced to 15 years to life in prison in 1982.  His habeas petition does not

23   concern that conviction directly, but instead focuses on a June 4, 2004 decision by a panel of the

24   Board of Prison Terms ("BPT") to find him not suitable for parole.

25        The BPT identified two factors in support of its determination that McCauley was not

26   suitable for parole.  First, "[t]he offense was carried out in a very cruel and a very callous

27   manner in that the victim was 75 years old and was a very defenseless man who was actually

28   behind the security of a screen door in his own home" and it was committed for a trivial reason.

     Resp. Exh.

*United States District Court*
For the Northern District of California

5 (June 4, 2004 reporter's transcript of BPT hearing (hereinafter "RT")), at 65.  Second, McCauley's pre-commitment behavior indicated unsuitability, i.e., he had an unstable social history, had a prior criminal record, and had long-term drug and alcohol abuse.  RT 66-67.  The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the Discussion section later in this order.

McCauley filed habeas petitions in the California courts.  The Marin County Superior Court denied the petition in a reasoned decision.  Resp. Exh. 2.  The California Court of Appeal and the California Supreme Court summarily denied McCauley's petitions.

McCauley then filed his federal petition for a writ of habeas corpus.  The court found cognizable two due process claims alleged in the petition: (1) the evidence was insufficient to support the BPT's decision and (2) the BPT's decision breached the plea agreement.  The court ordered respondent to show cause why the writ should not issue.  Respondent filed an unsuccessful motion to dismiss.  Respondent then filed an answer and petitioner filed a traverse.  The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged action occurred at San Quentin State Prison in Marin County, California, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); <u>see</u> <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 409-13 (2000).   Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  <u>See</u> <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A.      <u>Sufficiency Of Evidence Claim</u>

      1.      <u>Due Process Requires That Some Evidence Support a Parole Denial</u>

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability  proceedings.  <u>See</u> <u>Sass</u>, 461 F.3d at 1127-28; <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987); <u>Greenholtz v. Inmates of Nebraska Penal & Corr. Complex</u>, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision.  <u>Sass</u>, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985)).  "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support

1  the conclusion reached'" by the parole board.  Id. at 1128 (quoting Superintendent v. Hill, 472
2  U.S. at 455-56).  The "some evidence standard is minimal, and assures that 'the record is not so
3  devoid of evidence that the findings of the . . . board were without support or otherwise
4  arbitrary.'"  Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457).  The some evidence
5  standard of Superintendent v. Hill is clearly established law in the parole context for purposes
6  of § 2254(d).  Sass, 461 F.3d at 1129.

7        Furthermore, and of key importance, the parole board is not precluded from relying on
8  unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-
9  offense behavior in determining parole suitability.  See id. at 1129 (commitment offenses in
10  combination with prior offenses provided some evidence to support denial of parole).  The
11  familiar argument that the BPT cannot rely on these factors is based on the Ninth Circuit's
12  statements in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), that suggested that the value of
13  the criminal offense fades over time as a predictor of parole suitability:  "The Parole Board's
14  decision is one of 'equity' and requires a careful balancing and assessment of the factors
15  considered. . . .  A continued reliance in the future on an unchanging factor, the circumstance
16  of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals
17  espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at
18  916-17.  In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely
19  on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that
20  "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of
21  rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and
22  prior conduct would raise serious questions involving his liberty interest in parole."  Id. at 916.
23  These statements were dicta and not clearly established federal law as set forth by the Supreme
24  Court, such that the state court's refusal to adopt the Biggs reasoning would be a decision
25  contrary to, or an unreasonable application of, clearly established federal law as set forth by the
26  Supreme Court.  The Ninth Circuit recently backed away from the Biggs statements, and
27  confirmed that these statements from Biggs were dicta and were inappropriate under § 2254.
28  See Sass, 461 F.3d at 1129.  "Under AEDPA it is not our function to speculate about how future

4

parole hearings could proceed." <u>Sass</u>, 461 F.3d at 1129.       What little guidance has come from the Supreme Court suggests that judicial review should be extremely deferential to the original decision-maker in the parole context.  In addition to the very low evidentiary standard that <u>Superintendent v. Hill</u> imposes, other Supreme Court comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision.  <u>See</u> <u>Greenholtz</u>, 442 U.S. at 13.  "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of actual parole decisionmakers in predicting future behavior.  Our system of federalism encourages this state experimentation." <u>Id.</u>; <u>see also</u> <u>id.</u> at 8.

Past criminal conduct is not some arbitrary factor like eye color that  has nothing to do with present dangerousness.  Recidivism concerns are genuine.  <u>See</u> <u>Ewing v. California</u>, 538 U.S. 11, 26 (2003) (O'Connor J.) (noting a report stating that over 60% of violent offenders were arrested again within three years of their release).  California's parole scheme does not offend due process by allowing the BPT to predict that an inmate presents a present danger based on a murder he committed many years ago.

Having determined that there is a due process right, and that some evidence is the evidentiary standard for judicial review, the next step is to look to state law because that sets the criteria to which the some evidence standard applies.  One must look to state law to answer the question, "'some evidence' of what?"

2.    <u>State Law Standards For Parole For Murderers In California</u>

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years.  A first degree murder conviction yields a minimum term of 25 years to life and a second degree murder conviction yields a base term of 15 years to life imprisonment.  <u>See</u> <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1078 (Cal.), <u>cert. denied</u>, 126 S. Ct. 92 (2005); Cal. Penal Code § 190.  The upshot of California's parole scheme described below is that a release date normally must be set unless

various factors exist, but the "unless" qualifier is substantial.

A BPT panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1]  The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).  The panel may

---

[1]The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior.  15 Cal. Code Regs. § 2402(c).  The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior.  15 Cal. Code Regs. § 2402(d).

consider all relevant and reliable information available to it.  15 Cal. Code Regs. § 2402(b).

The regulations contain a matrix of suggested base terms for several categories of crimes. See 15 Cal. Code Regs. § 2403.  For example, for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on some of the facts of the crime.   Some prisoners estimate their time to serve based only on the matrix.   However, going straight to the matrix to calculate the sentence puts the cart before the horse because it ignores critical language in the relevant statute and regulations that requires him first to be found suitable for parole.

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity.  Dannenberg, 34 Cal. 4th at 1070-71.  Under state law, the matrix is not reached unless and until the prisoner is found suitable for parole.  Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole").  The California Supreme Court's determination of state law in Dannenberg is binding in this federal habeas action.  See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable.  "While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release."  Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense").

3.      Some Evidence Supports The BPT's Decision In McCauley's Case

The BPT identified two reasons for its decision to find McCauley unsuitable for parole:

7

1    the commitment offense and the pre-offense behavior.    The Marin County Superior Court

2    upheld the decision in a reasoned order.  <u>See</u> Resp. Exh. 2.  The Marin court stated that some

3    evidence had to support the decision and found that some evidence did support the decision.

4    <u>See</u> <u>id.</u> at 3-5.  The state court applied the correct legal standard, as evidenced by its citation to

5    <u>In re. Ramirez</u>, 94 Cal. App. 4th 549, 564 (Cal. Ct. App. 2001), <u>overruled on other grounds</u> in

6    <u>In re. Dannenberg</u>, 34 Cal. 4th 1061 (Cal. 2005).  <u>Ramirez</u> had cited and adopted the

7    <u>Superintendent v. Hill</u> some evidence standard as the proper standard for judicial review of

8    evidentiary sufficiency for parole denial cases.  <u>See</u> <u>Ramirez</u>, 94 Cal. 4th at 562-64.

9    Because the Marin County Superior Court's decision is the last reasoned decision, that is the

10   decision to which 2254(d) applies.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991);

11   <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 2041 (2006).

12

13                     a.    <u>Commitment Offense</u>

14          The reports considered at the parole suitability hearing described the crime leading to the

15   murder.  <u>See</u> Resp. Exh. 7.  McCauley was residing at the Dillard residence in Hayward for

16   about three months, was unemployed, was in arrears in his rent, and was asked by the

17   homeowner to move.  On February 11, 1981, McCauley removed his personal property to the

18   driveway.

19          McCauley and his crime partner Dean Stockton went to the neighbor's home, victim
         Miller Marks, and requested transportation for themselves and McCauley's belongings.
20       Marks declined due to the lateness of the hour.  An argument ensued and the screen door
         was forced open and Marks was stabbed repeatedly.  The wounds caused his death almost
21       immediately.  The murder weapon was a hunting knife that Stockton had brought to the
         scene.  After the murder, McCauley fled the scene immediately.  Stockton delayed long
22       enough to go through the residence in an apparent search for money.

23   Resp. Exh. 7, Life Prisoner Evaluation Report, p. 1.  The victim was 75 years old.  The Life

24   Prisoner Evaluation Report also provided McCauley's version of the incident, which was

25   basically that the stabbing occurred after a day of alcohol and drug abuse by him and Stockton

26   and that Stockton had been talking repeatedly about robbing and killing the victim.  <u>See</u> <u>id.</u> at

27   2.  In McCauley's version, after Marks refused to give them a ride, Stockton started stabbing

28   Marks and McCauley only stabbed Marks after Stockton told him to do so.  Also in McCauley's

8

1   version, McCauley remained present while Stockton began searching through the victim's

2   pockets and Stockton told McCauley he would no longer supply McCauley with drugs and

3   alcohol if he did not go along with the crime.

4            One of the circumstances tending to indicate unsuitability for parole is that the prisoner

5   "committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs.

6   § 2402(c)(1). The factors to be considered in determining whether that circumstance exists are

7   that there were multiple victims, "[t]he offense was carried out in a dispassionate and calculated

8   manner, such as an execution-style murder," "[t]he victim was abused, defiled or mutilated

9   during or after the offense," "[t]he offense was carried out in a manner which demonstrates an

10  exceptionally callous disregard for human suffering," and "[t]he motive for the crime is

11  inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1). The

12  BPT considered a circumstance and factors proper under California law.

13           There was some evidence in the record to support the BPT's determination that the

14  circumstances of the commitment offense indicated unsuitability. The record supported a

15  determination that murder was committed in a very cruel and callous manner in that McCauley

16  and his crime partner forced entry into the 75-year old man's home with a hunting knife, stabbed

17  him multiple times and did nothing to aid him after stabbing him. The motive for the killing was

18  the height of triviality, i.e., because the victim would not give McCauley and his crime partner

19  a ride. Even under McCauley's version of the crime (which the BPT was not obligated to

20  believe), the motive was trivial, i.e. to avoid being cut off from alcohol or drugs. RT 66. The

21  BPT identified more than the minimum elements of a second degree murder when it determined

22  that McCauley committed the murder in a very cruel manner as shown by the completely

23  unprovoked forced entry with a knife into the victim's house, the repeated stabbing of the victim,

24  and the trivial reason for the killing, see Dannenberg, 34 Cal. 4th at 1071.

25

26           b.   Pre-Offense Behavior

27           The BPT also relied on McCauley's pre-offense history for its determination that he was

28  not suitable for parole. The record supported these findings. McCauley had been arrested for

1   burglary, for which he was on probation at the time he killed the victim.  RT 16-17.  He also had

2   an unstable social history of leaving home at age 15 and having a "total disconnect with his

3   family."  RT 17-23, 66.  There also was evidence of McCauley's history of alcohol and drug

4   abuse starting at age 12.   RT  23-24 (marijuana and alcohol were used most frequently but he

5   also used LSD, cocaine, and heroin on approximately a monthly basis).

6          Consideration of McCauley's pre-offense history was not improper.   An unstable social

7   history is specifically listed as a circumstance tending to indicate unsuitability, <u>see</u> 15 Cal. Code

8   Regs. § 2402(c)(3).   His burglary conviction also was properly considered.   Although the

9   prisoner's "previous record of violence" on a victim is a specifically listed circumstance and non-

10  violent criminal history is not specifically listed as a circumstance that tends to indicate

11  unsuitability, § 2402(c)(2), the list of circumstances in § 2402(c) is non-exclusive, and §

12  2402(b) specifically allows the BPT to consider a great range of relevant and reliable

13  information, such as the prisoner's "past criminal history, including involvement in other

14  criminal misconduct which is reliably documented."  Even without knowing the particulars of

15  the burglary so as to determine whether it was violent, the burglary conviction could be

16  considered by the BPT as tending to show unsuitability.  Likewise, McCauley's lengthy history

17  of alcohol and drug abuse could be considered under § 2402(b), which allowed the BPT to

18  consider the "circumstances of the prisoner's social history."

19

20          c.     <u>The State Court Properly Rejected The Claim</u>

21          The BPT noted that several factors supported parole, but ultimately concluded that

22  McCauley was not suitable for parole.   The factors listed by the BPT in support of its

23  determination that McCauley was not suitable for parole had evidentiary support.   And the

24  factors were factors that could be considered in determining parole suitability.   The Marin

25  County Superior Court's rejection of McCauley's insufficient evidence claim was not contrary

26  to or an unreasonable application of the <u>Superintendent v. Hill</u> some evidence standard.

27  McCauley is not entitled to the writ on this claim.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.      Breach Of Plea Agreement Claim

McCauley also contends that the BPT's decision to find him unsuitable for parole breached his plea agreement, in violation of his right to due process. See Santobello v. New York, 404 U.S. 257, 261-62 (1971) (defendant has a right to enforce terms of plea agreement).

The Marin County Superior Court rejected McCauley's claim that the BPT's decision violated the plea agreement. "[T]his court is not persuaded that the plea agreement has been violated by the petitioner's continued incarceration. At the time of his plea, he understood, by his own admission, that the maximum punishment was 'life imprisonment' and when and if that term ended and petitioner was released from custody was a determination that people other than himself would make. His dispute is not with the original agreement, but with those who determined that he is currently unsuitable for parole." Resp. Exh. 2, p. 4.

The state court's decision was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court, as required for relief under 28 U.S.C. § 2254(d). McCauley has not pointed to language in any plea agreement that shows that any particular term in his plea agreement has been breached. His inability to identify any particular term that has been breached makes his claim rather weak. His suggestion that his plea agreement required that he be released from prison on his minimum eligible parole date is unpersuasive because he has provided no evidence in support of the argument; the only evidence on the sentence is the judgment that plainly shows his sentence is 15-to-life. Resp. Exh. 1. His argument that the BPT cannot consider the actual circumstances of the crime because a jury did not find any facts to be true is unsupported by the law as well as unsupported by any evidence that such a term existed in his plea deal. The BPT is not limited to the bare judgment in trying to assess whether the circumstances of the crime tend to show unsuitability. Despite his argument to the contrary, Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), has no applicability to the BPT's decision., as the BPT is simply determining whether McCauley should be paroled before he has served his maximum sentence.  In McCauley's case, his maximum sentence is life; neither the jury trial right nor Apprendi are implicated by a parole board's decision whether to release him before that maximum sentence has been served. McCauley's

12

sentence upon his conviction based on a plea agreement was 15-to-life and he has received the parole considerations to which he was entitled under that sentence. His claim that his plea agreement was breached in violation of his right to due process fails.

Moreover, as respondent correctly points out, the breach of the plea agreement claim is time-barred. The factual basis for McCauley's claim is his alleged belief that he was entitled to be paroled upon his minimum eligible parole date of September 22, 1989. The court agrees with respondent's argument that the one-year period for filing a habeas claim started on September 23, 1989, the day after McCauley reached his minimum eligible parole date and still remained in prison. The current petition is untimely under the statute of limitations, 28 U.S.C. § 2244(d), because it was not filed until about fifteen years after the minimum eligible parole date.

C.    Petitioner's Motion To Expedite Consideration Of Petition

McCauley filed a motion for expedited consideration of his habeas petition. He reports that he was found suitable for parole and was released from custody early in 2006 and wants expeditious review so that he can be released from the burdens of parole sooner rather than later. The motion is DENIED. (Docket # 13.) McCauley's status as a parolee does not mean that his petition should be put ahead of the many other petitions from persons still in prison who contend they were denied due process during their parole suitability hearings. The court has decided McCauley's petition in the ordinary course. Also, because the petition has been denied, the decision has no impact on the length of his parole following his release upon being found suitable for parole in 2006.

**CONCLUSION**

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 20, 2006

_____
SUSAN ILLSTON
United States District Judge

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28